UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

DENTAL HEALTH PRODUCTS, INC.,

        Plaintiff,

        v.                                    Case No. 21-C-1358

SUNSHINE CLEANING GENERAL
SERVICES, INC.,

        Defendant.

---

## DECISION AND ORDER

---

Plaintiff Dental Health Products, Inc. (DHP) brought this diversity action against Sunshine Cleaning General Services, Inc. (Sunshine) and The Global Group Funding, Inc. (Global), asserting claims of breach of contract, intentional misrepresentation, negligent misrepresentation, strict liability misrepresentation, and third-party beneficiary of contract under Wisconsin law. In a previous decision, the court dismissed Global for lack of personal jurisdiction and all but the breach of contract claim against Sunshine. The case is before the court on cross motions for summary judgment. DHP seeks summary judgment as to only liability on its claim against Sunshine, and Sunshine seeks summary judgment and dismissal of all claims against it. For the following reasons, Sunshine's motion will be granted and DHP's motion will be denied.

## BACKGROUND

DHP is a Wisconsin corporation with its principal place of business in New Franken, Wisconsin. Pl.'s Proposed Findings of Fact (PPFOF) ¶ 1, Dkt. No. 29. Sunshine is a Virginia corporation with its principal place of business in Gaithersburg, Maryland. *Id.* ¶ 2. On February 8, 2021, DHP and Sunshine entered into an Escrow and Purchase Agreement (the Agreement),

pursuant to which DHP was to purchase from Sunshine boxes of "non-Powder Nitrile Gloves for Medical Use – FDA Authorized, CE, EN ISO374, EN 374-5:2016" (the gloves). *Id.* ¶ 3; Dkt. No. 18-1 (the Agreement). The Agreement specified that DHP would purchase a minimum of 240,000 boxes of the gloves per week from Sunshine for 24 weeks at a price of $11.00 per box. PPFOF ¶¶ 3–4. Sunshine, in turn, contracted with Global to ensure an adequate supply of the gloves. *Id.* ¶ 7; Dkt. No. 18-5 (the Sunshine-Global Agreement).

By the end of 2020, as a result of the COVID-19 pandemic, personal protective equipment (PPE), including the gloves, had become extremely difficult to obtain, and the PPE commercial market was rife with scams, price-gouging schemes, and fraudulent products. Def.'s Proposed Findings of Fact (DPFOF) ¶ 5, Dkt. No. 34. Given the complexities and uncertainties unleashed by the COVID-19 pandemic, DHP sought assurances from Global, from whom Sunshine planned to purchase the gloves, that Global would be able to maintain a steady supply and fulfill its obligations. PPFOF ¶ 8. Global, via two letters of attestation, assured both DHP and Sunshine that it would be able to meet its contractual obligations. *Id.* ¶ 9 (referencing Dkt. Nos. 18-2 & 18-3). In the first letter, dated February 5, 2021, counsel for Global attested that, based on certain documents that counsel had reviewed and because of Global's business relationships, Global would have "the capacity to fulfill" the necessary supply of the gloves. *Id.* ¶¶ 10–11 (quoting Dkt. No. 18-2). Three days later, at DHP's request, counsel for Global produced a second letter, which attested further in support of Global's capacity to fulfill the terms of the Agreement. PPFOF ¶ 12; DPFOF ¶ 8. It was only after those two letters of attestation were issued that DHP and Sunshine entered into the Agreement. DPFOF ¶ 10.

On February 8, 2021, in accordance with the Agreement, DHP issued a purchase order to Sunshine for 246,000 boxes of the gloves; per the Agreement, DHP was to receive them within 20

2

days of its payment to Sunshine clearing escrow. PPFOF ¶ 5; DPFOF ¶ 12. On February 17, 2021, DHP's payment of $2,706,000.00 for the first shipment of the gloves cleared Sunshine's escrow account. PPFOF ¶ 6; DPFOF ¶ 15; Dkt. No. 18-1, Ex. A, at 16. The gloves were due to arrive March 9, 2021. PPFOF ¶ 15.

On March 2, 2021, Global notified Sunshine that the first shipment of the gloves would be delayed by 10 to 15 days because of difficulties scheduling an inspection of the manufacturing plant. *Id.* ¶¶ 14–15; DPFOF ¶ 16. After Global learned that one of its business partners, Gaia Corporation Co. Ltd., would be unable to manufacture the gloves or sell them to Global because it was not authorized to sell or manufacture them, Global sought to find another supplier. PPFOF ¶¶ 17, 19; DPFOF ¶ 18. On March 10, 2021, Global presented to Sunshine potential alternative brands to fulfill DHP's first order, and Sunshine forwarded that information to DHP. DPFOF ¶ 21. Sunshine, DHP, and Global agreed on an alternative brand of gloves for the order, and between March 12, 2021, and March 17, 2021, Global assured DHP and Sunshine that the alternative gloves were available and that a delivery schedule was forthcoming. *Id.* ¶ 22. On March 18, 2021, DHP requested an update from Global about the status of the replacement gloves; Global did not respond. *Id.* ¶¶ 24–25. Global ultimately was not successful in locating an alternative supplier of gloves, which left Sunshine unable to fulfill its obligation to supply the gloves to DHP under the Agreement. PPFOF ¶ 21.

On March 19, 2021, DHP demanded the return of the $2,706,000.00 from escrow; Sunshine did not object, and the escrow agent complied. *Id.* ¶ 22; DPFOF ¶¶ 26–27. Because of Sunshine's failure to provide the gloves to DHP, DHP was unable to honor the contracts that it had made with its own customers, which resulted in "financial damages" totaling, in DHP's telling, $17,568,000. PPFOF ¶¶ 25–26; DPFOF ¶ 28.

3

Case 1:21-cv-01358-WCG   Filed 02/22/23   Page 3 of 14   Document 47

**LEGAL STANDARD**

Summary judgment is appropriate when the movant shows that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In deciding a motion for summary judgment, the court must view the evidence and draw reasonable inferences in the light most favorable to the nonmoving party. *Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 893 (7th Cir. 2018) (citing *Parker v. Four Seasons Hotels, Ltd.*, 845 F.3d 807, 812 (7th Cir. 2017)). The party opposing the motion for summary judgment must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* Summary judgment is properly entered against a party "who fails to make a showing to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Austin v. Walgreen Co.*, 885 F.3d 1085, 1087–88 (7th Cir. 2018) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

**ANALYSIS**

The Agreement provides that the laws of the State of Wisconsin shall govern the validity of the Agreement, the construction of its terms, and the interpretation and enforcement of the rights and duties of the parties thereto. *See* Dkt. No. 18-1 at 11 (the Agreement, Section 9.1). Under Wisconsin law, prevailing on a claim for breach of contract "requires proof of three elements: (1) a valid contract; (2) breach of that contract by the defendant; and (3) damage from the breach. *Gallo v. Mayo Clinic Health System-Franciscan Med. Ctr., Inc.*, 907 F.3d 961, 965 (7th Cir. 2018); *Northwestern Motor Car, Inc. v. Pope*, 51 Wis. 2d 292, 296, 187 N.W.2d 200 (1971).

4

Sunshine concedes that the Agreement was a valid contract. Sunshine also concedes that it failed to adhere to deliver to DHP the gloves called for by the Agreement. *See* Def.'s Br. in Opp'n to Pl.'s Mot. for Partial Summ. J. at 4, Dkt. No. 41 ("It is undisputed that that there was a valid contract and Sunshine did not deliver the goods to DHP."). Sunshine argues that it is nevertheless entitled to summary judgment because (1) the only damages DHP seeks to recover are excluded by the Agreement and (2) Sunshine's failure to deliver the gloves is excused under the terms of the Agreement.

In support of its first defense, Sunshine argues that the only damages DHP seeks, i.e., lost profits, are not recoverable under the terms of the Agreement. As for the second, Sunshine contends that the force majeure provision of the contract excuses its performance, as do the doctrines of commercial impracticability and frustration of purpose. Finally, Sunshine contends that DHP breached the Agreement by prematurely withdrawing its funds from escrow and terminating it without notice, thereby relieving Sunshine of any further obligation to perform. The court's analysis begins with the issue of damages and ends with force majeure.

**A. Damages**

Damages are an essential element of a breach-of-contract claim. *Black v. St. Bernadette Congregation of Appleton*, 121 Wis. 2d 560, 566, 360 N.W.2d 550 (Ct. App. 1984). The precise amount of claimed damages can be an issue for trial. *See Brogan v. Indus. Cas. Ins. Co.*, 132 Wis. 2d 229, 238, 392 N.W.2d 439 (Ct. App. 1986) (holding that "[t]he amount of damages awarded is a matter resting largely in the jury's discretion" (citing *Ballard v. Lumbermens Mut. Cas. Co.*, 33 Wis. 2d 601, 605, 148 N.W.2d 65 (1967))). But absent any evidence of recoverable damages, a breach of contract claim fails, and summary judgment is appropriate. *Black*, 121 Wis. 2d at 566.

"[U]nder general principles of contract law, '[a]n injured party is entitled to the benefit of his agreement, which is the net gain he would have realized from the contract but for the failure of the other party to perform[,]'" *Peterson v. Cornerstone Property Development, LLC*, 2006 WI App 132, ¶ 50, 720 N.W.2d 716, 730, 294 Wis.2d 800, 828 (quoting *Thorp Sales Corp. v. Gyuro Grading Co.*, 111 Wis.2d 431, 438–39, 331 N.W.2d 342 (1983)). When the contract is for the sale of goods, the measure of the buyer's damages for non-delivery "is the difference between the market price at the time when the buyer learned of the breach and the contract price together with any incidental and consequential damages provided in § 402.715, but less expenses saved in consequence of the seller's breach." Wis. Stat. § 402.713(1). Absent a contractual limitation, consequential damages are also recoverable if foreseeable to the seller. Section 402.715, which defines "Buyer's incidental and consequential damages," reads:

> (1) Incidental damages resulting from the seller's breach include expenses reasonably incurred in inspection, receipt, transportation and care and custody of goods rightfully rejected, any commercially reasonable charges, expenses or commissions in connection with effecting cover and any other reasonable expense incident to the delay or other breach.
>
> (2) Consequential damages resulting from the seller's breach include:
>
> > (a) Any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise; and
> >
> > (b) Injury to person or property proximately resulting from any breach of warranty.

Wis. Stat. § 402.715.

DHP has not offered any evidence of direct damages flowing from the alleged breach of the Agreement by Sunshine. When Sunshine failed to deliver any of the 246,000 boxes of gloves DHP had ordered under the terms of the Agreement, the escrow agent returned to DHP, with Sunshine's agreement, the entire $2,706,000 DHP had paid for the gloves. DHP recovered the

6

entire purchase price for the gloves and has offered no evidence that the market price at the place delivery was to occur differed from the contract price. Nor has it offered any evidence that it sustained incidental damages. Instead, DHP's claim is for lost profits.

DHP acknowledges that its theory of damages is "founded on the lost profits it would have otherwise received had [Sunshine] performed its obligations under the Agreement." Pl.'s Br. in Opp'n to Def.'s Mot. for Summ. J. at 6, Dkt. No. 36 (citing PPFOF ¶¶ 25–26). As support for its claim, DHP asserts: "In anticipation of Defendant performing its obligations under the Agreement, Plaintiff made several commitments to up-stream customers, including for its customers to purchase a minimum of 5,760,000 boxes of gloves at a price of $13.60 per box for the first half of shipments, and $14.50 per box for the second half of shipments." PPFOF ¶ 24. Due to Sunshine's failure to supply the agreed-upon quantity of gloves pursuant to the Agreement, DHP claims it was unable to honor the contracts that it had entered into with its customers, which resulted in financial damages of no less than $17,568,000. *Id.* ¶¶ 25–26. In other words, DHP wants to recover from Sunshine the profits it anticipated it would have earned from its resale of the gloves Sunshine was to deliver to third parties.

DHP's claim for breach of contract fails because the only damages it seeks are explicitly excluded by the Agreement. Section 8.8 of the Agreement, entitled "Liability Limitation," provides:

> a. Neither party will be liable to the other party for any incidental, indirect, special, or consequential damages, arising out of or in connection with this Agreement, whether or not the parties were advised of the possibility of such damages.
>
> b. The liability limitations in this Section do not apply to claims or liabilities arising from either party's fraud or intentional misconduct.

Dkt. No. 18-1 at 11. Lost profits are consequential damages. Wis. Stat. § 402.715(2); *see also Daanen & Janssen, Inc. v. Cedarapids, Inc.*, 216 Wis. 2d 395, 401, 573 N.W.2d 842 (1998)

("Consequential economic loss includes all indirect loss, such as loss of profits resulting from inability to make use of the defective product."). Because there are no allegations of fraud or intentional misconduct, lost profits are not recoverable under the terms of the contract.

DHP attempts to avoid this result by arguing first that the lost profits it seeks are direct, not consequential, damages. Pl.'s Br. in Opp'n at 6–9. In support of its argument, DHP relies principally upon *Reid Hospital and Health Care Services, Inc. v. Conifer Revenue Cycle Solutions, LLC*, 8 F.4th 642 (7th Cir. 2021). In that case, the district court had granted summary judgment dismissing a hospital's breach of contract action against the company the hospital had hired to manage the hospital's billing and revenue collections on the ground that the relief the hospital sought—lost revenue—was not allowed under the contract. The contract in that case, like the one here, excluded "indirect, incidental, special, and consequential" damages absent willful misconduct. *Id.* at 646. The Court of Appeals reversed, noting that "[t]he definition of consequential damages is elusive, ambiguous, and equivocal" and that the distinction between direct and consequential damages "is not absolute, but relative." *Id.* at 648 (internal quotation marks, brackets, and citations omitted). Given the uncertain definition of consequential damages and the general purpose and structure of the hospital's contract, the court concluded that the district court had erred in concluding that all of the various categories of damages sought by the hospital were excluded as a matter of law. The court did not resolve the layered factual and legal wrinkles in these sub-classes of damages but remanded the case to the district court for a more complete factual record. *Id.* at 654.

*Reid* is not controlling here for several reasons. First, *Reid* concerned the interpretation and application of Indiana law. It is Wisconsin law that applies in this case. But more importantly,

the contract in *Reid* was for services, more specifically, billing and revenue collection services. As the *Reid* court explained:

> To be sure, lost profits and lost revenue are the classic examples of unrecoverable consequential damages from *Hadley* [*v. Baxendale*, 156 Eng. Rep. 145 (1854)], but not all lost revenue is consequential by definition in all cases. Even where a class of damages is generally consequential, the ultimate determination is a relative one based on the substance and terms of the contract. *E.g.*, *Kerr Steamship Co.*, 157 N.E. at 141 (stressing that this is a "relative" context- and contract-specific inquiry). *Hadley* was about a contract for delivery. But this is a contract for revenue collection, after all. It is not hard to see how a breach of this contract could, would, and did lead directly to lost revenue.

*Id.* at 649.

In this case, too, the contract is one for delivery; it is a contract for the sale of goods. And as the above-quoted Section 402.715(2) makes clear, lost profits from future sales anticipated by the buyer of which the seller had reason to know fall well within the definition of consequential damages as applied to such contracts. By the clear and unequivocal terms of the contract at issue here, lost profits from future sales are excluded. Contractual limitations of remedies are lawful in Wisconsin. *See* Wis. Stat. § 402.719(1)(a); *see also S. Fin. Group, LLC v. McFarland State Bank*, 763 F.3d 735, 739 (7th Cir. 2014) ("Wisconsin permits the parties to agree to limit remedies for breach of contract and to disclaim consequential damages, provided the limitations are not unconscionable." (citing *Murray v. Holiday Rambler, Inc.*, 83 Wis. 2d 406, 265 N.W.2d 513, 519–20 (1978))).

DHP argues in the alternative, however, that if the lost profits it seeks constitute consequential damages, then the contractual limitation must be held unenforceable. Contractual limitations of remedies are unenforceable where their enforcement would cause the contract to fail of its essential purpose. Wis. Stat. § 402.719(2). Such limitations are also unenforceable where enforcement would be unconscionable. Wis. Stat. § 402.719(3).

9

Neither exception applies. A contractual remedy fails of its essential purpose "when the remedy is ineffectual or when the seller fails to live up to the remedy's provisions, either of which deprives the buyer of the benefit of the bargain." *Waukesha Foundry, Inc. v. Indus. Eng'g, Inc.*, 91 F.3d 1002, 1010 (7th Cir. 1996). "Although parties may limit damages remedies by contract, they must provide 'at least a fair quantum of remedy for breach of obligations.'" *S. Fin. Group*, 763 F.3d at 741 (quoting *Phillips Petrol. Co. v. Bucyrus–Erie Co.*, 131 Wis. 2d 21, 388 N.W.2d 584, 592 (1986) (citing U.C.C. § 2–719, cmt. 1)).

In this case, excluding consequential damages as a remedy did not frustrate the essential purpose of the contract. The limitation of liability did not leave DHP with "no remedy at all." Pl.'s Br. in Opp'n at 11. DHP's remedy was the return of its money. DHP was also entitled to the direct damages it sustained, i.e., the difference in the market price at the time and place of delivery and the contract price. Wis. Stat. § 402.713. But as noted above, DHP has failed to offer any evidence of the market price. Instead, it has sought only the lost profits it claims it sustained when it was not able to resell the gloves to its own customers. The exclusion of consequential damages did not cause the contract to fail of its essential purpose. It did not deny DHP a fair quantum of remedy for breach of obligations.

Nor is the liability limitation unconscionable. The liability limitation, like the other provisions of the Agreement, was the product of negotiation and bargaining between sophisticated businesses. DHP was represented by counsel who was the principal drafter of the Agreement and in particular, the section entitled "Liability Limitation." *See* 3d Decl. of William S. Woodward ¶¶ 3–4, Dkt. No. 39. DHP has offered no reason to "reject the parties' allocation of risk." *Southern Financial*, 763 F.3d at 740. Under these circumstances, the limitation is not unconscionable and

must be enforced. And because DHP has offered no evidence of recoverable damages, its contract claim fails.

### B. Force Majeure

Sunshine also argues it is entitled to summary judgment because its performance was excused under the Force Majeure clause of the Agreement. Sunshine argues that its delay in performance was also justified by the common law doctrines of commercial impracticality and frustration of purpose, but these exceptions are subsumed in the Force Majeure provision of the Agreement. *Commonwealth Edison Co. v. Allied-General Nuclear Servs.*, 731 F. Supp. 850, 855 (N.D. Ill. 1990) (noting that force majeure clause supersedes the common law doctrine of impossibility or impracticality). The Force Majeure provision of the parties' agreement, Section 7.9, reads:

> Neither party is liable for delays nor failures in performance (other than payment obligations) under this Contract due to Force Majeure. For purposes of this Contract, "Force Majeure" shall mean any cause or causes which wholly or partly prevent or delay the performance of obligations arising under this Contract and shall include, without limitation by enumeration, an act of God, explosion, accident, fire, epidemic, pandemic, landslide, lightning, earthquake, storms, flood or similar cataclysmic occurrence; an act of the public enemy, war, blockade, insurrection, riot, civil disturbance, sabotage, strikes, lockouts, or other labor difficulties; unavailability of labor, fuel, power or raw materials, plant breakdowns; inability to obtain supplies; restrictions or restraints imposed by law or by rule, regulation or order of governmental authorities, whether federal, state or local; action or failure to act of governmental authorities; and any other cause beyond the reasonable control of the party relying on such cause to excuse its performance hereunder. In the event of such delay, the time for performance shall be extended as reasonably necessary to enable performance.

Dkt. No. 18-1 at 8.

Sunshine argues that its failure to deliver the gloves to DHP as called for by the Agreement was due to the fact that Global failed to supply it with the gloves it was required to deliver to DHP. In other words, Sunshine's failure to perform was due to its "inability to obtain supplies." Because

11

the "inability to obtain supplies" is expressly included as one of the causes for delay or inability to perform that excuse a party's liability under the Force Majeure provision of the Agreement, Sunshine argues that it cannot be held liable. And since Global's inability to supply the gloves was ultimately due to the COVID-19 pandemic, and "pandemic" is also included in the Force Majeure provision as a cause that excuses liability for a failure to perform, Sunshine argues that this too excuses its failure to deliver the gloves as called for under the Agreement. Def.'s Br. in Supp. of Mot. for Summ. J. at 20–23, Dkt. No. 33.

DHP argues that neither Global's failure to deliver the gloves to Sunshine, nor the COVID-19 pandemic, constitute force majeure events that relieve Sunshine of its obligation to perform under the Agreement. "Inability to obtain supplies," DHP contends, does not encompass the finished goods that are the subject of the Agreement. Instead, the term "supplies" is meant to refer to things such as raw materials and other inputs necessary to manufacture the gloves. DHP also contends that Sunshine has failed to offer any evidence that the COVID-19 pandemic prevented it from performing its obligations under the Agreement.

The issue raised by the parties is essentially one of contract construction. "[A] force majeure clause must always be interpreted in accordance with its language and context, like any other provision in a written contract, rather than with reference to its name." *Wis. Elec. Power Co. v. Union Pacific R. Co.*, 557 F.3d 504, 507 (7th Cir. 2009). In Wisconsin, as in most states, "[t]he primary goal in contract interpretation is to give effect to the parties' intentions." *Seitzinger v. Cmty. Health Network*, 2004 WI 28, ¶ 22, 270 Wis. 2d 1, 676 N.W.2d 426. The court is to "ascertain the parties' intentions by looking to the language of the contract itself." *Id.* (citing *State ex rel. Journal/Sentinel, Inc. v. Pleva*, 155 Wis. 2d 704, 711, 456 N.W.2d 359 (1990)). The language used by the parties "is to be interpreted consistent with what a reasonable person would

understand the words to mean under the circumstances." *Id.* "If the language within the contract is ambiguous, two further rules are applicable: (1) evidence extrinsic to the contract itself may be used to determine the parties' intent and (2) ambiguous contracts are interpreted against the drafter." *Id.* (citing *Cent. Auto Co. v. Reichert*, 87 Wis. 2d 9, 19, 273 N.W.2d 360 (1978)).

"Force Majeure" is defined in the Agreement to mean "any cause or causes which wholly or partly prevent or delay the performance of obligations arising under this Contract." Dkt. No. 18-1 at 8. The provision then goes on to provide, by way of example, a non-exclusive list of causes that the parties agreed would constitute force majeure that would relieve either party of liability for delays or failures in performance. One of the listed examples, "inability to obtain supplies," would seem to apply in that Global's failure to meet its obligation to Sunshine caused Sunshine's inability to deliver the gloves to DHP at the time and place the Agreement required. Among the definitions of the word "supplies" are "the quantity or amount (as of a commodity) needed or available" and "the quantities of goods or services offered for sale at a particular time or for one price." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 1184 (10th ed. 1999). The gloves called for by the Agreement fall within these definitions. And as DHP alleged in its complaint, "Global was unable to source satisfactory replacement gloves, despite promises to do so, and, thereby, caused Sunshine to breach the Agreement." Compl. ¶ 21, Dkt. No. 1-1. In other words, Sunshine's "inability to obtain supplies" was a cause that wholly or partly prevented or delayed the performance of its obligations under the Agreement.

Under the plain language of the Agreement, it thus follows that Sunshine is not liable for its delay in performance. The result would be the same even if the language was ambiguous, since the principal drafter of the Agreement was DHP's attorney, 3d Decl. of William S. Woodward ¶ 3, and "ambiguous contracts are interpreted against the drafter." *Seitzinger*, 270 Wis. 2d 1, ¶ 22.

13

And while there may not be evidence that Global's failure to locate a supplier would have prevented Sunshine from ever performing its obligations under the Agreement, DHP elected to terminate the Agreement as a result of the delay, thereby relieving Sunshine of any further obligations under the Agreement. For this reason, as well, Sunshine is entitled to summary judgment.

## CONCLUSION

For the foregoing reasons, Sunshine's motion for summary judgment (Dkt. No. 32) is **GRANTED**. DHP's motion for partial summary judgment (Dkt. No. 27) is **DENIED**. The Clerk is directed to vacate the trial dates in this matter and enter judgment dismissing all claims against Global without prejudice and all claims against Sunshine with prejudice. Sunshine is also entitled to costs pursuant to Fed. R. Civ. P. 54(d)(1).

**SO ORDERED** at Green Bay, Wisconsin this 22nd day of February, 2023.

s/ William C. Griesbach
William C. Griesbach
United States District Judge